UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN PABLO HERNANDEZ CRUZ,<br><br>　　Plaintiff,<br><br>v.<br><br>KRISTI NOEM et al.,<br><br>　　Defendants. | Case No. 8:25-cv-02566-SB-MAA<br><br>ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER [DKT. NO. 2] |

　　Petitioner Juan Hernandez Cruz was arrested by Immigrations and Custom Enforcement (ICE) and is being detained at an immigration detention center without bond. He filed a petition for habeas corpus and an application for a temporary restraining order (TRO) on November 14, 2025, seeking his immediate release from custody or, alternatively, an order requiring that the government provide him with an individualized bond hearing before an immigration judge (IJ). The government, in opposition, challenges the Court's jurisdiction and the merits of the claims. The Court held a hearing on December 2, and both parties submitted on the Court's tentative order. Because Petitioner has failed to demonstrate a likelihood of success on the merits, the TRO is denied.

I.

　　Petitioner was born in Mexico and has resided in the United States since 2003. He currently lives in Buena Park, California. He has had steady employment since his arrival and has no criminal history. His wife and three children are all United States citizens.

　　Petitioner was "apprehended" by ICE on October 17, 2025 and is currently being detained at the Adelanto ICE Processing Center. After he was taken into custody, he was placed into removal proceedings and charged with entering the

1

United States without inspection and being present without valid immigration documents under 8 U.S.C. §§ 1182(a)(6)(A)(i) and (a)(7)(A)(i). On November 10, 2025, the IJ denied Petitioner's request for a bond hearing, concluding that it had no jurisdiction to provide the requested relief.

Petitioner then filed the underlying petition, asserting that a bond hearing was required under: (1) 8 U.S.C. § 1226(a); (2) the Administrative Procedure Act (APA); and (3) the Due Process Clause. Dkt. No. 1 ¶¶ 48–57. On the same day, he filed the TRO application for an order directing the government to release him from custody or to provide him with an individualized bond hearing before an IJ pursuant to 8 U.S.C. § 1226(a). The government filed an opposition, and Petitioner replied. Dkt. Nos. 5 & 7.

II.

A.

Petitioner invokes habeas jurisdiction pursuant to 28 U.S.C. § 2241. The government, on the other hand, contends that two statutory provisions deprive this Court of jurisdiction over the petition—(1) § 1252(g) and (2) § 1252(a)(5) when read in tandem with § 1252(b)(9). 8 U.S.C. §§ 1252(g), (b)(9), and (a)(5). The government is mistaken.

1.

Section 1252(g) limits review of cases in three areas:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28 . . . , no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). "The Supreme Court has instructed that we should read § 1252(g) narrowly." *Ibarra-Perez v. United States*, 154 F.4th 989, 991 (9th Cir. 2025) (citing *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020)). Section 1252(g) thus applies only to "those three specific actions themselves." *Ibarra-Perez*, 154 F.4th at 996. Here, Petitioner's challenge to the failure to provide him with a bond hearing does not fall within any of the

2

enumerated categories. The government's attempt to recast his claims as "aris[ing] from the decision to commence such proceedings against [him]" because they "stem from [his] detention during removal proceedings" (Dkt. No. 5 at 6) is unpersuasive.[1] *See Chavez v. Noem*, No. 3:25-CV-02325, 2025 WL 2730228, at *3 (S.D. Cal. Sept. 24, 2025) (rejecting argument that § 1252(g) "divests this Court of jurisdiction because 'Petitioners' claims stem from ICE's decision to commence removal proceedings and therefore detain them'").

2.

Section 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter[.]" 8 U.S.C. § 1252(a)(5). Section 1252(b)(9) limits "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien[.]" *Id.* § 1252(b)(9). The government argues that together, subsections (a)(5) and (b)(9) "mean that any issue—whether legal or factual—arising from any removal-related activity can be reviewed only through the [petition-for-review] process." Dkt. No. 5 at 7 (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016)).

However, the Supreme Court has interpreted § 1252(b)(9)'s phrase "arising from any action . . . to remove an alien" narrowly, holding that it does not bar review of challenges to detention without a bond hearing. *Jennings v. Rodriguez*, 583 U.S. 281, 292–93 (2018). These provisions therefore do not preclude review of Petitioner's claims. *See id.*; *see also Altamirano Ramos v. Lyons*, No. 2:25-CV-09785-SVW, 2025 WL 3199872, at *3 (C.D. Cal. Nov. 12, 2025) ("[I]t is well established that the jurisdiction-channeling provisions, [§§ 1252(a)(5) and (b)(9)],

---

[1] The government's authorities, which do not address whether a bond hearing is legally required, are inapposite. *See Valencia-Mejia v. United States*, No. 08-CV-2943-CAS, 2008 WL 4286979, at *4 (C.D. Cal. Sept. 15, 2008) (no jurisdiction to hear false-imprisonment claim because detention arises from the Attorney General's decision to initiate removal proceedings); *Wang v. United States*, No. 10-CV-0389-SVW, 2010 WL 11463156, at *6 (C.D. Cal. Aug. 18, 2010) (same); *Herrera-Correra v. United States*, No. 08-CV-2941-DSF, 2008 WL 11336833, at *3 (C.D. Cal. Sept. 11, 2008) (same); *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 297 (3d Cir. 2020) (no jurisdiction where plaintiff challenged the decision to execute the removal order).

do not bar claims that are independent of or collateral to the removal process, such as Petitioner's claim [regarding his eligibility for release on bond].") (cleaned up).

*   *   *

In short, the U.S. Supreme Court has interpreted the text of §§ 1252(g), (a)(5), or (b)(9) to allow for habeas review over the claims for a bond hearing as presented in this case.

B.

"[A] habeas petitioner seeking relief under [§ 2241] generally must first exhaust all available administrative remedies." *Altamirano Ramos*, 2025 WL 3199872, at *3. However, the exhaustion requirement in habeas cases under § 2241 is prudential, not jurisdictional, and thus subject to waiver. *Arango Marquez v. I.N.S.*, 346 F.3d 892, 897 (9th Cir. 2003). Assuming without deciding that prudential exhaustion is required, "a court may waive the prudential exhaustion requirement if . . . pursuit of administrative remedies would be a futile gesture[.]" *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Here, Petitioner contends that he is not required to exhaust his claims by appealing the IJ order denying bond to the Board of Immigration Appeals (BIA) because such an appeal would be futile. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 229 (BIA 2025) (holding that "[t]he Immigration Judge properly held that he lacked authority to hear the respondent's request for a bond as the respondent is an applicant for admission and is subject to mandatory detention"). The government does not dispute this point. Thus, the Court will address the merits of Petitioner's claims.

III.

To obtain a TRO, a plaintiff must establish: (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury, (3) that the balance of hardships tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (noting that the TRO and preliminary injunction standards are substantially the same). In the Ninth Circuit, a preliminary injunction may issue where there are "serious questions going to the merits"—a "lesser showing than likelihood of success on the merits"—and a "balance of hardships that tips sharply toward the plaintiff," provided the other elements of the *Winter* test are also met. *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (cleaned up). "A preliminary injunction is an

extraordinary remedy never awarded as of right," but rather only "upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22, 24.

IV.

Petitioner is undisputedly an inadmissible alien.[2] *See* 8 U.S.C. § 1182(a)(6)(A)(i) (stating that an alien is deemed inadmissible if he is present in the United States without being admitted or paroled). He entered the United States unlawfully many years ago without presenting himself for inspection and has remained here ever since. The dispute in this case, as presented in the TRO application, is which of two provisions of the Immigration and Nationality Act (INA) is applicable here—8 U.S.C. § 1225 or 8 U.S.C. § 1226. Petitioner contends that he is subject to § 1226's discretionary-detention provision requiring a bond hearing, while the government contends that he is subject to § 1225's mandatory-detention provision rendering him ineligible to be released on bond.[3]

A.

Petitioner is an "applicant for admission," subject to mandatory detention under the plain text of § 1225. 8 U.S.C. § 1225(a)–(b).

"Section 1225 governs the inspection, detention, and removal of aliens seeking admission into the United States." *Sandoval v. Acuna*, No. 6:25-CV-01467, 2025 WL 3048926, at *3 (W.D. La. Oct. 31, 2025). The statute defines "an applicant for admission" broadly:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port

---

[2] The Court uses the statutory term "alien" for noncitizens to avoid confusion with the text of the relevant statutes. *See Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020).

[3] As the government acknowledges, its prior "longstanding agency practice" was to provide bond hearings for detainees like Petitioner. Dkt. No. 5 at 13. That practice changed in July 2025, when DHS issued a policy memorandum that "required all applicants for admission to be mandatorily detained during removal proceedings pursuant to § 1225(b)(2)." *Alonzo v. Noem*, No. 1:25-CV-01519, 2025 WL 3208284, at *2 (E.D. Cal. Nov. 17, 2025) (cleaned up).

of arrival . . .) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1). Section 1225 requires mandatory detention of an applicant for admission if "the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." *Id.* § 1225(b)(2)(A).[4]

Section 1225's definition of "an applicant for admission" is controlling. *See Stenberg v. Carhart*, 530 U.S. 914, 942 (2000) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning."). As relevant here, an alien is "deemed" to be "an applicant for admission" if he is present in the United States without having been admitted. This unambiguously broad statute does not distinguish among unadmitted individuals who are present in the United States for one hour, one day, one year, or one decade. *See* 8 U.S.C. § 1225(a)(1). Nor does it distinguish between those who arrive in the United States for inspection and those who cross the border without inspection. In this case, Petitioner does not dispute the fact that he entered the United States unlawfully and is present without having been admitted. *See* Dkt. No. 2-1 at 9 (stating Petitioner is inadmissible under 8 U.S.C. § 1182(a)). Consequently, he is an "applicant for admission" under § 1225(a), subject to mandatory detention under § 1225(b). *See Sandoval*, 2025 WL 3048926, at *3 (inadmissible aliens under § 1182(a)(6)(A)(i) are "applicants for admission").

Petitioner attempts to avoid the plain language of § 1225 by distinguishing himself from unadmitted individuals based on his long presence in the United States without inspection—a distinction rejected by Congress decades ago. Before § 1225(a)(1), removal procedures differed for those arriving and presenting themselves for inspection and those unlawfully present in the United States who entered without inspection. *Torres v. Barr*, 976 F.3d 918, 927–28 (9th Cir. 2020). The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) added § 1225(a)(1) to eliminate this distinction to avoid "an anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully." *Id.* at 928.

Thus, Petitioner's reliance on his lengthy presence in the United States after failing to present himself for inspection cannot remove him from § 1225's

---

[4] Petitioner does not contend that he is entitled to admission.

mandatory-detention framework. *See Sandoval*, 2025 WL 3048926, at *6; *see also United States v. Gambino-Ruiz*, 91 F.4th 981, 990 (9th Cir. 2024) ("refus[ing] to interpret the INA in a way that would in effect repeal th[e] statutory fix").

B.

Petitioner raises several unpersuasive reasons why he is subject to § 1226, and not § 1225.

First, he contends that he falls within the plain text of § 1226(a) because he is "an alien . . . arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1226(a), however, applies more generally and includes those "who enter lawfully but later become inadmissible." *Sandoval*, 2025 WL 3048926, at *4. Section 1225(a), in contrast, applies specifically to an individual like Petitioner who is deemed an applicant for admission. In these circumstances, the specific provision controls over the more general one. *See id.*; *see also Altamirano Ramos*, 2025 WL 3199872, at *6 (applying this canon of statutory interpretation to §§ 1225 and 1226); *United States v. Brumbaugh*, 139 F.4th 1077, 1085 (9th Cir. 2025) (noting that the "well established canon of statutory interpretation . . . that the specific governs the general . . . applies especially where, as here, Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions") (cleaned up).

Second, Petitioner argues that applying § 1225 to him would render § 1226(c)—which provides for mandatory detention of, among others, those unlawfully entering the United States without inspection—superfluous. But the fact that Congress added this provision as part of the Laken Riley Act in 2025 cannot be read to displace or supersede § 1225's requirement that all applicants for admission, including those who unlawfully came to the United States without inspection, be detained. *See Sandoval*, 2025 WL 3048926, at *5 (rejecting superfluity argument). Petitioner has not shown that the superfluity canon can override the plain text of § 1225(b)(2)(A). *See In re Pangang Grp. Co., Ltd.*, 901 F.3d 1046, 1056 (9th Cir. 2018) (declining to apply the superfluity canon when doing so would "introduce ambiguity into straightforward text").

Third, Petitioner contends that § 1225(b)(2)(A) does not apply to him because it governs only a subset of applicants for admission—those "seeking admission." He points to other phrases in § 1225 referring to aliens "arriving in the United States" or those who have "been physically present in the United States

continuously for the 2-year period," which purportedly show the statute is "focused only on people arriving at a port of entry or who have recently entered the United States."  Dkt. No. 2-1 at 14.  This contention, however, cannot be squared with the definition of an "applicant for admission," which expressly includes those present in the United States without inspection.  8 U.S.C. § 1225(a)(1); *see Jennings*, 583 U.S. at 287 (2018) (noting that § 1225(b)(2) is "a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) [i.e., those who arrive for inspection]"); *see also Torres*, 976 F.3d at 928 (noting that Congress eliminated the distinction between those entering the United States with or without inspection).

IV.

Petitioner has not shown a likelihood of success on the merits of his claims, nor has he raised serious questions going to the merits.  He therefore has not demonstrated entitlement to the emergency relief he seeks.  *See California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) ("Likelihood of success on the merits is the most important factor; if a movant fails to meet this threshold inquiry, [the court] need not consider the other factors.") (cleaned up).  The motion is denied.

Date: December 2, 2025

_____
Stanley Blumenfeld, Jr.
United States District Judge